Good morning, Your Honors. My name is Sondra Turin. I'm here for the Petitioner Leonilo Retana Leyva. Administrative findings of fact are conclusive unless a reasonable adjudicator would be compelled to conclude to the contrary. I'm here to show you that the evidence in this case established just that. The fact that is an issue, or the finding that is an that a form called an I-213 was completed by the deportation officer. Now, that I-213 is called a record of deportable or inadmissible alien. 8 CFR section 1240.10C prohibits the unrepresented. And that is exactly what happened in this case. Okay, so at the time, the 213 information, is your argument that he was incompetent at the time that he provided the information? Yes, Your Honor, and we provided a great deal of evidence to that effect. First, we provided that medical records from the Cherokee County Criminal Court that had medical records concerning Mr. Leyva. Just two weeks prior to the preparation of the I-213, there was a medical diagnosis saying that the patient was very ill. They declined to process, they on the grounds that he was extremely ill. The medical records from the Cherokee County said that he was hearing voices. He was classified as mental. That's in the administrative record at 338. There was an affidavit submitted from his criminal attorney, William Wilder, who And there was an affidavit submitted by Mark Eskenazi, an attorney who overheard one of the employees of the Cherokee County District Clerk's Office saying, oh yes, Rotana had worms in his brain. This was just two weeks prior to the preparation of the I-213. What the immigration judge did was eventually find that he was incompetent to proceed without safeguards under matter of MAM. A medical examination is required to be performed of all detainees who are put into custody, and that examination was performed by Dr. Sweiskud, Erica Sweiskud. In her examination, she said that Rotana had a slow speech and was suffering from seizures. Administrative record at 129 through 130. Let me ask you this. In the various examinations, is there an examination or determination by one of the medical personnel that made a definitive medical determination of competency? I mean, I saw some things in there where obviously they took histories from him and that kind of thing, you know, asking him about prior psychiatric history, that kind of thing. But which, is there in here where someone made the definitive determination, this person's competent? No, Your Honor, there is not. There was not any at first found him to be competent, but then later, after he had said that he was in Social Security proceedings, in criminal proceedings, and then later that the immigration dog had agreed not to bite him, the immigration judge found him not to be competent to stand, to proceed with the proceedings without safeguards. But then he appointed counsel, didn't he? Yes, he did. After that point, I was appointed counsel on a pro bono basis. However, the I-213, what's at issue is that he was found not, he was found by the immigration judge to be competent at the time that the I-213 was prepared. And that is not permitted, well, if he was incompetent at that time, given all of that evidence, if he was incompetent at that time, he could not admit deportability without being represented by counsel. Well, that's sort of the question I pose. At that time, who had made the assessment of his, what medical personnel, is what I want to say, of his competency that the IJ or someone else would have had to act based on? The only medical, the medical records that were provided to the in there had, had there been a determination by someone that, you know, this person is schizophrenic, he's manic, he's, you know, whatever psychiatry. There wasn't a specific diagnosis. However, they did say that he was hearing voices at 338 and he was classified as mental. Well, may I ask a question here? Yes. What does competency mean in the immigration law? Under matter of MAM, competency requires that you understand the nature of the proceedings against you, that you be able to cross-examine the witnesses and provide evidence, excuse me, that you be able to participate, that you can consult with your attorney, and that you can reasonably cross-examine the government witnesses. Well, he was a point, okay, I'll take, I'll take that. Then my point is this, in competency, generally speaking, is a different issue than mental illness. Yes, Your Honor. Does the immigration law distinguish between competency and mental illness? Yes, Your Honor. And like I said, those specific things that are set forth in matter of MAM are what mental competency is, requires. Now, that doesn't mean that the proceedings can't continue. They can. With counsel? With safeguards, with counsel, with a guardian ad litem, with an extra friend. Where's the law that requires the government to appoint a guardian ad litem? It's not required. It's on a case-by-case basis. However, a guardian ad litem could be to take any action that is appropriate and necessary to resolve the cases before them. Oh, I also wanted to withdraw one of the arguments that I had made prior. I would like to withdraw the argument that the three-judge panel was required in this case. All right. We'll hone in on your time's running. There's a lot in this case. As you know, the government's position is that at the time the 213 information was provided, that your client was, quote, competent. In other words, unless there's a showing of inaccuracy, et cetera, et cetera, the 213 can be relied on. Their position is that at the salient time when the information was given, is that A, you will have your client don't attack it as inaccurate, or B, there's no showing that he was incompetent at that time. Specifically to say . . . I mean, obviously, when he had the seizure in the hearing, the judge says was clear. I guess the point is whether we're dealing with periods where he has, quote, lucid intervals of sort, and is it a matter of the IJ's discretion to determine, well, at that point, he's able to answer questions body-to-body to where the 213 can be relied on. But the judge did have at that time all of the medical records specifically, including that he was hearing voices and the types of parasitic brain infection. And he had those, and those were two weeks prior to the preparation of the I213. The I213 itself just simply states that he is from Mexico. It doesn't include on there, even though there's a place on there, as to where in Mexico. It has his incorrect age. It has, that he has no mental, it has on there that he has no health problems, which, in fact, he had epilepsy and diabetes. And so there was plenty of evidence that not only was the I213 inaccurate, but prior, immediately prior to that, that he was facing severe mental problems. And what other evidence is there that he was from Mexico other than his statement in the 213? Is Your Honor, in his testimony, he said that he was from Hidalgo, Mexico. However, that was prior to having an attorney, and that would go against that regulation that disallows the immigration judge from taking someone's admission of deportability when they are found to be mentally incompetent and lack an attorney. And that was done at the time prior to my appointment in the case. But he is from Hidalgo. Your Honor, we have no idea. Well, there's something in the record about him having relatives in the states and so on and so forth, correct? He does state that he had relatives in the state. He did not recall them. He did not recall where they lived. He said North Carolina, but not specific as to where, and I could not locate them. He gave fairly detailed answers at that hearing. I mean, in October 20, 2016, he gave pretty detailed answers about where he's from, when he first thought he entered, his family was in the United States, who his birth mother was, who raised him, his father's name. The judge then said he's competent, but then he started rambling. The judge declared him incompetent. Yes, after he started discussing that about the immigration dog not biting him. But this was October of 2016. When was the form? I believe it was on that date. When was the Form 213 information obtained? The I-213 information was obtained 9-7 of 2016. It's usually the very first document. So you want us now to appoint someone to determine his mental competence as of 9-7-2016. Is that the point of all this? Exactly. And if he's found mentally incompetent, he gets an attorney that can still deport him, right? Exactly. But his statement as to being deportable cannot be used against him if he is not represented by the attorney. Where is he now? Where is he now? Your Honor, I'm afraid that I don't know where he is. However, that does not moot this case, given that he was deported, right? I'm sorry. Yes, he was in fact deported prior to the petition for review being filed. That would not moot this case because if he resurfaces, should he prevail in this case, he's entitled to a new hearing. And this court in general denies stays of removal because if the alien prevails, they're entitled to repatriation. What about in absentia rulings? In absentia rulings? You're not in contact with your client in the absence from the court? Well, I would ask that this court order that the ICE find him and repatriate him if he prevails in this case. In Mexico? Yes, Your Honor. Does ICE do that? I have had that done from Honduras. Well, I mean, is it our job to make a case not moot or not suspended or whatever? Or is it your job? Well, the immigration court could administratively close the case or terminate the case without prejudice to bringing it again in the future. What's wrong with that? I would have no problem with that if that if that's what the court decided. Is that a relief you asked for? Yes, Your Honor. Okay, restate succinctly what the relief is you want from this court. I would like the court to find that he was entitled to a guardian ad litem to assist me in making decisions in the case. I would like the court to find that he did not that his statement on the I-213 was inadmissible and therefore under this under the clear and convincing standard he was not removable and therefore he should be repatriated to this country or if he is or if he is if he resurfaces and he prevails then that his case be calendared in the immigration court. Okay, all right. Well, we've got your your first argument. Let's hear from the United States to see their response. Ms. Byrd. A lot going on here, Ms. Byrd. Sure is. May it please the court, Sarah Byrd, on behalf of the respondent, the Attorney General. The court should deny the petition for a review because the properly admitted the form I-213 as evidence of his alienage of him being born in Mexico. So first, the proceedings were fundamentally fair. The statute at 8-1229-AB3 clearly states that removal proceedings can go forward even if someone is not competent. Well, it looks, I mean at least facially, there's enough going on with this guy by acknowledgement of everybody around him that at least arguably suggests he's either in and out or not always there or whatever. So it puzzles me that, you know, that alone didn't our appointing counsel at least trigger, you know, early on in the proceedings instead of, you know, pressing along. You've got a long period of time before there's ever a lawyer, you know, brought in and so forth. But your argument is that may be true, but they could do what they did, I guess. Yes, Your Honor. My argument is that the proceedings were fundamentally fair and we are, we, the immigration judge found that he was not competent and he agrees. So that's not an issue. No one's arguing that he was competent. The only issue is can his statement in September of 16 during the 213 interview, is that admissible to prove? Apparently that's the only evidence the government has that he's from Mexico and he was here illegally. That seems to be the main issue in this case and I would... So will you address that? Yes. So the regulations that counsel was referring to are 8 CFR 1240.10 and that regulation prohibits accepting an admission of removability from someone who is either a minor and not represented or a someone who is not competent and not represented. And in this case, that's at the pleading stage. So during immigration proceedings, there's a pleading stage and then an evidentiary stage. And what that regulation is saying is that you cannot sustain a charge, that an immigration judge cannot sustain a charge of removability based solely on a pleading. Just I admit I'm removable if someone is not competent and not represented. Here, the immigration judge did not sustain the charges based on pleadings. In fact, pleadings were not taken. As you said, he was given several continuances it did prolong it but continuances are actually a safeguard. He was given continuances to allow him to seek counsel and to allow the Department of Homeland Security to file medical evidence. And then at that October 20th hearing, he was found not competent and then the immigration judge obtained pro bono counsel as a safeguard. It was not until after pro bono counsel was obtained and was representing him that the immigration judge actually took pleadings to the charges and he denied the charge of removability through counsel. So that regulation... I thought it was in September, the 7th or 9th was when the information from the 213 was obtained from him. That's right. And that is... In front of the judge that he then answered a number of other questions, right? That's absolutely right. So the timeline September 7th is that first point of contact. If he was incompetent on September 7th when he orally said I'm from Mexico, I'm here illegally, I've entered and gave a date. If he was incompetent on that date, can that evidence be used to prove removability and to give me the law that says that? Okay. So the law dating back to 1988 matter of Barsines is a board decision. Absent evidence that a form I-213 contains information that is incorrect or obtained by coercion or duress, that document is inherently trustworthy and admissible as evidence to prove alienage or And it reiterated that the form I-213 is admissible evidence of alienage or of place of birth. And it adopted or quoted a Ninth Circuit case saying once the forms have been properly admitted, then the government's prima facie case of deportability has been made. And then that shifts the burden of production to the alien to show that they are lawfully present. And this court adopted that rule that the form I-213 is admissible and reliable evidence of alienage. And then that burden of production shifts. Since he's had counsel for several years now, right? That's right. Not during the immigration proceedings, but yes, he's had counsel for quite some time. And has counsel ever raised any doubt about the facts to which he testified in October? No. There, the point. I mean, my point is there's a distinction between incompetence, in incompetency to participate in proceedings on the one hand and being, say, schizophrenic on the other hand. Does the immigration law recognize that? The immigration law does recognize that. I would say there's a difference between incompetence, which the board defines in matter of MAM as being a rational and factual understanding of the nature and object of the proceedings. So that is the definition of incompetence for immigration proceedings versus being incapable of providing accurate information as to basic biographical facts. Even someone who's schizophrenic, if they were on medication, could potentially provide some. But they're not on medication. I have family experience with schizophrenia. Okay. So. You could be very, very smart and be schizophrenic. Absolutely. And the board recognizes that in matter of MAM, which is their seminal case on MAM, there's a difference between mental illness. And mental illness would be indicia, which would mean that the immigration judge would need to inquire more. But that's all it is. It's not fundamentally a finding. We have a finding a month later about the IJ that he is mentally incompetent. Right. And that goes back to your question earlier, which I think was, raises a very important fact that even if he was mentally incompetent at the time of the form I-213, September 7th, 2016, he could still give accurate information as to where he was from, as to his place of birth. And so that is, goes back to that matter of Barcenas case. Who makes that determination that he was still confident to give biographical information? Well, that is matter of Barcenas says that there has to be evidence showing that either the information is incorrect or it was obtained by coercion in order to undermine the I-213. And that would be. We have evidence that he was incompetent a month later. Right. But that does not, that is not a third exception that, because for the exact reason. Incompetency may mean that it's incorrect. We just don't know. Exactly. We don't know because there's not any evidence that it is incorrect and someone could easily be incompetent and yet be able to provide correct information. So we would need more evidence. Say, for example, something saying that he has wavered and has, sometimes he thinks he's from Mexico. Sometimes he thinks he's from. It just seems odd. The government is the mover here to, you know, remove him. And there's at least anecdotal evidence as all these examinations about his mental situation, et cetera. It's in and out. I mean, the guy has a seizure in the middle of the proceedings and on and on. So it's not make believe. I mean, it's there. So even sort of say in a prima facie since the 213 is there, but then all this other stuff happens, but it just seems odd to me. The government has no other corroborating or other supporting information to show the accuracy of the information that he gave. Instead, it's totally relying on what a person said. I mean, I get you in terms of what matter of man said and incorrect and obtained by coercion and all that, but it just seems I'm fundamentally curious at best that in the wake of all of that, there's nothing else the government has to corroborate or sustain that at all. It's just totally that. Go ahead. The form I-213 does say that they ran checks in various federal databases. Is that in the record? That's what I thought I read somewhere that they said they did checks in federal databases. Is it in the record? They confirmed the immigration history, and that's in the record in the I-213. Okay. Were people called to testify? Were they deposed? Did they put in any statements? No, they were not called to testify. However, in Bustos-Torres, this court held that you don't have to present that testimony because unless he shows evidence that it's either incorrect or obtained by coercion, then it's admissible as prima facie evidence of alienage, and then the burden of form, notwithstanding what he said, that the agent said they ran him through the database and confirmed that he is not here lawfully. It says that they ran it through several databases, and these checks revealed the criminal and immigration histories above. Also- Let me ask a question, though. Once he had counsel, they sort of redid the proceeding, did they not? They did not even take pleadings until he had counsel, so that's when it really started. NTA, Notice to Appear or whatever, and then they had more proceedings. Right. And didn't his counsel have every opportunity at that time to suggest that he was not removable? Absolutely, and that's why- So who has the burden at that time in those additional proceedings? The burden initially is on the government to show alienage, and once the government has shown alienage, it shifts to him, and then he declined to present any evidence through counsel of being lawfully present. The whole point is he's arguing competency, he's never arguing non-removability. That's right. He could have done that, could he not? That's right, and he could of his alienage. He hasn't ever argued that that statement is incorrect. He's never argued, I am not from Mexico. He's represented by counsel. I mean, that would be an alternative plea that would normally be made. Right, and representation by counsel was the safeguard that ensured that he was able to exercise his rights in proceedings. Did counsel argue at the proceedings that he was not removable because there was no proof that he was- Counsel pleaded not removable, but based, it wasn't an argument that he's not from Mexico. It was a, I want to hold the government to its burden. That's my point. Did he say, I'm holding the government to its burden, and in response to that, what did the government produce? The government produced the I-213, which it has been held is presumptively reliable evidence of alienage, in which it contained a that he was born in Mexico, which he has never stated that he was not born in Mexico, and he didn't present any evidence to undermine that, the correctness of that statement, or to show that he was incapable of providing that accurate information. The government didn't say, here's the background checks we ran, and here's what we found. That is all contained within the Right. And that's enough to shift the burden to him. Bustos-Torres holds that. I think important to this case is a matter of Ponce Hernandez. Ponce Hernandez involved a minor, and like someone who's incompetent, a minor under the regulations is not, the immigration judge is not allowed to accept a pleading, an admission of removability. But in Ponce Hernandez, the board held, even though we can't accept an admission of removability, we can take that person's statement contained in a Form I-213 as to where they were born, because that is basic biographical information. And the board said that what, if he wanted to get that statement out of the record, the statement of where he was born, he would have to show that his age impeded an published decision in Ponce Hernandez and said... He's asking us to appoint a mental health person so he can prove that in September, when he gave the I-213 information, he was incompetent to give biographical information. Now, putting that aside, you say that the conclusory hearsay statement in the I-213 that the agency independently ran a database check is enough. I think it's that plus, because the rules of evidence don't strictly apply in immigration proceedings. If we're only relying on the form that says we ran background checks... Well, and also that he has consistently stated that he's from Mexico. Let's just assume for the sake of argument that we don't know he's competent, we can't rely on that. Because he's asking, he's saying I was the equivalence between being incompetent and being... Put that aside. Putting that aside, okay. Putting that aside. Okay. What's your best case that we can rely on the conclusory hearsay statement from the officers that they ran federal database checks and confirmed he was not born in the United States and was here... My best case is Bustos-Torres. That's this court's decision, 898 F. 2nd, 1053. It's cited in both of the agency decisions and in my brief. And it holds that that Form I-213 can be relied upon, notwithstanding the fact that it contains hearsay. And just looking about it... Well, it's a business record. It is a business record. Government business record. The only other option would be to require the government in every case that they think someone... Put a witness on. Someone is from Mexico to go search out their birth certificate in Mexico. Before you're completed, if Judge Owens finished, why is this case not moved because of deportation? Well, he's allowed to continue to accept him back. But if he's not in contact with his counsel... I mean, one of these issues came up in a case I sat on a year or so ago, and the fellow had been deported, but his counsel knew where he was and so could locate him. And if I'm just... This must happen more than occasionally, and I would like your expertise as to how cases like this can continue in theory when the counsel is not in contact with the client and the client is not to be found. Well, I did not know until I got here that counsel was not in contact. I'm asking for your experience in other cases. In other cases? To be honest, I'm not sure. I'm sure my office has handled that. I don't think it renders it necessarily moot, but I'm just not sure I could file something if you'd like me to. Well, I would think to decide theoretical cases. And if the fellow has been deported, he's probably back here illegally somewhere, but we'll never know. If he doesn't call his counsel, if his counsel can't find him, we'll never know. So why shouldn't we just suspend the whole thing? I'm afraid I don't have a good answer to that. I don't know the answer. I can find out if you'd like me to. Well, again, I mean, it seems to me it would be interesting to know whether these things happen very often and what the normal legal consequences are. I do know that normally someone can continue to pursue their petition for review even after they've been deported. I mean, if this were a tort case, I've had this in the context of, I guess it was a constitutional case post-Katrina, where someone came into our court in a public interest sense and said that Louisiana's laws authorizing requiring certification of florists were unconstitutional. I said, where are the florists? Where are your clients? He said, well, one of them dropped out of business and another one did such and moved out of the state and another one I've never been able to contact. And therefore, it was not obvious to us and we dismissed the case as moot. And I don't see why it should be any different in immigration situations than it is in ordinary civil litigation. I can see that. I don't know for sure. I do think the court can deny the petition for review because he had safeguards and he had an opportunity to present evidence. He declined to present any evidence, but he had that opportunity. And this court's case law and the board case law state that the Form I-213 can be relied upon as alienage. And then that shifts the burden of production to him and he declined to present anything. The fact that he may or may not have been incompetent on September 7th when the information was taken simply isn't enough to, which is what he argues, isn't enough to create a bright line rule saying that anytime anyone's incompetent, they're incapable of giving accurate information as to their birthplace. Surely people are apprehended and they refuse to say where they're from. And the government runs a check and they put it on Form I-213. Where they think he or she is from, if the court's held in those circumstances, that's enough to shift the burden. Yes, I think so. I can't think of a specific case, but certainly people sometimes refuse to say where they're from and then the government has to produce other evidence. Now, in immigration court proceedings, refusing to say, silence can give rise to... What other evidence is the government required to produce when the person says I'm not talking to you? Once the person is in court, if they refuse to say, then there can be an implication by their silence. In the immigration context, the government's relieved of its burden to prove they're not here at all? Well, the government would still have to submit the Form I-213 or other evidence explaining why they believe the person to be... Okay, what's your case that's in those circumstances, the I-213 that says we've checked federal databases is adequate? I don't know of cases off the top of my head where from the very beginning the person refused and the Form I-213 got challenged all the way up. I just, I don't know. That's not what happened in this case. In this case, they did check databases, but he also... I'm just saying... I hear what you're saying and I'm sorry I don't have a better answer. The law is that the government, if they suspect someone and they have reason to believe and they file a charging document charging them and then the person comes in and refuses to, denies everything but refuses to speak that Fifth Amendment right, the immigration... We have a Fifth Amendment... Well, right. Proceedings, but... That the silence can be used against them. This was the same immigration judge throughout this series of appearances, was it not? Yes. Okay. Yes. All right. All right. Thank you. Ms. Burt. All right. Back to you, Ms. Turin. The government relies heavily on our Fifth Circuit cases. What do you do with those? Okay. I'm sorry, I didn't hear the question. Well, the government relies heavily on Bustos-Torres and some other, you know, of our circuit cases which speak to, you know, the admissibility of the evidence in the 213, unless it's inaccurate, etc., etc. So, you know, cases are there, so I just hadn't heard you respond. In Bustos-Torres, what happened was that the alien wanted to submit an affidavit to the person who had created the I-213 and was not permitted to because they were not available at that time. However, they did submit an affidavit, so that case is really an opposite to this specific situation. There are, I believe, about six databases that can be run through on the I-213. None of those databases said he is from Mexico. Well, they don't. They would say he's not from the U.S., right? They don't say that either. If the I-213 is found on page I'm sorry. Well, the I-213 is in the record. If the I-213, the government has the burden of proving by clear and convincing evidence that the individual is an alien. So, if the I-213 can be found on the I-213 because cases like Bustos have held that it is inherently reliable. In this case, it's not inherently reliable if the person is found to be mentally incompetent at the time that it was made. That document on its face has his wrong age. It's not factually accurate. It says that he has no medical problems. That is not factually accurate. The government could have obtained a birth certificate in this case, but chose not to. Could you not also have contended as an alternative matter that he was not an alien? Your Honor, we pled the Fifth Amendment on that, putting the government to its proof. You don't have the Fifth Amendment in a civil deportation proceeding? Yes, Your Honor. Guess what? The Fifth Amendment does apply to the determination of alienage. And the immigration judge, according to her, is entitled to use that against your client? Yes, Your Honor. Okay. But the standard is clear and convincing. You made this argument to the immigration judge that we're trying to get at his competency at the time the I-213 form was made. Yes. What did the immigration judge say about that? Nothing. But in his opinion, he found that he was competent at the time of the making of the I-213. And what evidence do you have that he wasn't? All of the evidence that we have that he wasn't competent was that the statements that he had worms in his brain, that he was very ill, that the criminal charges against him in Cherokee County were dropped because of his illness, and that he was being picked up by ICE. The regulation that prevents the immigration judge from accepting an admission of removability from someone, which is 8 CFR 1240.1C, if that does not apply to the I-213, then that renders it void. Because the I-213 is created at the exact same time as the notice to appear by the deportation officer. And under Arcardi v. Shaughnessy, I would say that they have to follow that regulation. May I again ask you, when was the last time you were in contact with your client? Your Honor, it would have been at the time, I visited him a number of times while the case was on appeal. I'm not exactly sure of the dates. I'm not impugning your integrity or anything like that, just as a factual matter. Approximately when? I believe there is an email in the record that says that he, I don't have the exact administrative record page, but there's an email saying, you guys supported my client without advising me. How is that a safeguard? And that was 2018? I believe it would have been 2017. This case has been pending for quite some time. No, no, it must have been 2018. 2018, but that's in the record? Yes, Your Honor. Okay, so it may have been two years. Yes, Your Honor. Since you were in contact, or more, since you were in contact with your client. No. I'm sorry, a year and a half. If I may, one other thing is that if he were to return to this country, he faces the potential of criminal prosecution, and that is why this case is not moot. I'm still not sure about that. I mean, it's just, to me, mootness means that you have a judgment that you can effectuate against a known client, not against someone who has gone into the world. I'd at least like the opportunity to try to find him. I mean, again, well, that may be an alternative, and another alternative may be just to suspend the proceedings. Yes, Your Honor. Thank you. Any other questions? Nope, I think we have it. If you want to, no, I think we've got it. Thank you, it was my pleasure. We'll dig into it. Thank you, Ms. Byrd and Ms. Torrent.